UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

ERIC HOLIDAY,

        Plaintiff,

vs.

AMERICAN CASUALTY CO. OF
READING, PA dba MARCH USA, INC.,

        Defendant.

2:11-cv-02089-GMN-NJK

**O R D E R**

Before the Court is Defendant American Casualty Co. of Reading, PA's Motion to Dismiss Plaintiff's Claims of Cervical Spine Injury on the Grounds of Spoilation of Evidence (#30). The Court has considered the Defendant's Motion (#30), the Plaintiff's Response (#36), and the Defendant's Reply (#39).

**BACKGROUND**

This dispute arose from a motor vehicle accident that occurred on July 11, 2005. The Plaintiff was allegedly driving a truck owned by his employer when he ran out of gas. The Plaintiff pulled his truck as far to the right as he could and turned on his hazard lights. He could not pull onto the shoulder, however, due to freeway construction. The Plaintiff contacted his employer and proceeded to wait by the side of the road. The Plaintiff was then rear-ended by a late-model Dodge Ram pickup truck.

...

...

1   In March 2006, the Plaintiff notified the Defendant that he would be making an uninsured

2   motorist claim under his employer's policy with American Casualty.  On July 11, 2011, the

3   Plaintiff filed an Amended Complaint in the Eighth District Court in Clark County, Nevada,

4   alleging breach of contract. The Defendant removed the case on December 23, 2011.

5   Among the Plaintiff's claims are that he suffered serious and disabling injuries, including

6   cervical spine injuries. On November 21, 2012, the Defendant deposed the Plaintiff.  During the

7   deposition, the Plaintiff explained that his treating doctor had indicated that the Plaintiff's pain

8   was not improving because his injuries were permanent. The Plaintiff also testified that he had

9   some new x-rays taken at his last chiropractic visit which showed that his C2 vertebra was still

10  significantly out of place, even after years of treatment. The Plaintiff stated he intended to give

11  those x-rays to the Defendant's neurosurgery expert, but was unable to do so because the expert

12  was in surgery when he attempted to give the x-rays over.

13  The Defendant has since made numerous attempts to collect those x-rays. However, upon

14  requesting the x-rays from the facility in which they were taken, the Defendant learned that the

15  Plaintiff had taken the only copy of the x-rays from the facility sometime before his deposition

16  on November 21, 2012.  The Plaintiff claims he took the x-rays with the intent of providing them

17  to the Defendant either though its expert or at the deposition. However, to date, the Plaintiff has

18  not produced the x-rays. The Plaintiff indicates that he has now misplaced the x-rays, and

19  continues to look for them.  The Plaintiff has also indicated that he is willing to submit to new x-

20  rays.

21  Based on the assumption that the x-rays are permanently misplaced, the Defendant

22  requests that the Court Dismiss the Plaintiff's cervical spine injury claims entirely or,

23  alternatively, allow an adverse inference that the x-rays would show that the Plaintiff's condition

24  has improved and preclude the Plaintiff's treating medical providers from testifying regarding the

25  contents of the lost x-rays, that the Plaintiff's condition has worsened, and that the Plaintiff's

26  condition will require future medical care. Docket No. 39, at 2. Additionally, the Defendant

27  requests costs and fees associated with preparing its motion. *Id*.

28  The Defendant asserts that the lost set of x-rays are critical evidence because without

them, the Plaintiff cannot prove that he is permanently injured.

**DISCUSSION**

**I.     Request for Dismissal of Plaintiff's Cervical Spine Injury Claims due to Spoilation**

Spoilation is the "destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir.1999) (citing *Black's Law Dictionary* 1401 (6th ed.1990)). The Federal Court has the ability to impose sanctions for spoilation arising from the court's "inherent power to control the judicial process and litigation, but the power is limited to that necessary to redress conduct 'which abuses the judicial process.'" *Silvestri v. General Motors Corporation*, 271 F.3d 583, 590 (4th Cir.2001). However, prior to imposing sanctions, the court must first make a finding of fault. *Id*. Then, the court should fashion a remedy which serves "the prophylactic, punitive, and remedial rationales underlying the spoilation doctrine." *Id*. (quoting *West*, 167 F.3d at 779).

**A.     Fault**

With respect to a party's duty to preserve material evidence, even if the party does not "own or control the evidence, he still has an obligation to give the opposing party notice of access to the evidence or of the possible destruction of the evidence if the party anticipates litigation involving that evidence." *Id*. at 591 (citing *Andersen v. Schwartz*, 687 N.Y.S.2d 232, 234–35 (N.Y.Sup.Ct.1999)); see also *Wm. T. Thompson Co. v. General Nutrition Corp., Inc.*, 593 F.Supp. 1443, 1455 (C.D. Cal. 1984) ("While a litigant is under no duty to keep or retain every document in its possession once a complaint is filed, it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request.").

Here, the Plaintiff does not dispute that he was in possession of the recent x-rays at issue in this motion and he admits that, although he continues to look for the x-rays, they "cannot be located." Docket No. 36, at 4. Thus, the Court finds that the Plaintiff is at fault for the loss of the recent x-rays.

**B.     Remedy**

There are two sources of authority under which the Court can sanction a party who has despoiled evidence: the inherent power of federal courts to levy sanctions in response to abusive litigation practices, and the availability of sanctions under Rule 37 against a party who "fails to obey an order to provide or permit discovery." *Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1337-38 (9th Cir.1985); Fed. R. Civ. P. 37(b)(2)(C). However, prior to imposing sanctions or redressing conduct, it must be shown whether the missing evidence is critical to the case of the moving party. *May v. F/V LORENA MARIE*, 2011 WL 1875470 (D. Alaska May 16, 2011) (*citing Nichols v. State Farm Fare and Casualty Co.*, 6 P.3d 300, 304 (Alaska 2000)); see also *Babich v. River Oaks Toyota*, 879 N.E .2d 420 (1st Dist., 2007).

Dismissal is an available sanction when "a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings" because "courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) *(citing Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995)). Before imposing the "harsh sanction" of dismissal, however, the Court must consider the following factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Id.*

The Court is not required to make explicit findings regarding each of these factors, *United States ex rel. Wiltec Guam, Inc. v. Kahaluu Constr. Co.,* 857 F.2d 600, 603(9th Cir.1988), but, a finding of "willfulness, fault, or bad faith" is required for dismissal to be proper. *Anheuser-Busch,* 69 F.3d at 348. Additionally, the district court must consider "less severe alternatives" than outright dismissal. *U.S. for Use & Ben. of Wiltec Guam, Inc. v. Kahaluu Const. Co., Inc.*, 857 F.2d 600, 604 (9th Cir. 1988.).

...

...

**1.      Bad Faith**

A party's destruction of evidence qualifies as willful spoliation if the party has "some notice that the documents were *potentially* relevant to the litigation before they were destroyed." *Leon*, 464 F.3d at 959 (emphasis in original) (quoting *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir.2002)).

Here, there is no dispute that the x-rays are relevant to this litigation. The Plaintiff asserts permanent cervical spine injuries which, he claims have not improved, despite several years of treatment. Thus, the most recent x-rays would presumably show whether the Plaintiff's spine has improved. Additionally, the Plaintiff does not dispute that he knew the x-rays were relevant to the litigation before he misplaced them. Thus, the Court finds that the Plaintiff's misplacement of the x-rays, while he was on notice that the x-rays were relevant, amounts to willful spoilation.

**2.      Prejudice**

The prejudice inquiry "looks to whether the [spoiling party's] actions impaired [the non-spoiling party's] ability to go to trial or threatened to interfere with the rightful decision of the case." *Leon*, 464 F.3d at 959 (citing *Wiltec Guam*, 857 F.2d at 604). For example, in *Anheuser-Busch*, the Ninth Circuit found prejudice when a party's refusal to provide certain documents "forced Anheuser to rely on incomplete and spotty evidence" at trial. *Anheuser-Busch*, 69 F.3d at 348 .

Here, the loss of the most recent x-rays does not threaten to interfere with the rightful decision in this case nor does it force the Defendant to rely on incomplete or spotty evidence. The Defendant does not assert that the lost x-rays provide a critical snap-shot in time of the Plaintiff's injuries.[1] Rather, the Defendant argues that the x-rays would demonstrate whether the Plaintiff's vertebra *remain* out of place. Docket No. 30, at 13. The Plaintiff is alleging that he has sustained permanent cervical spine injuries which have not improved, despite several years of treatment.

---

[1] Although the Defendant claims that "**Plaintiff himself admitted in his Opposition that new x-rays will not cure the problem when he acknowledged the possibility that new x-rays might show something different that the x-rays that he lost.**" Docket No. 39, at 5 (emphasis in original), a review of the Plaintiff's Opposition indicates that this is a mischaracterization of the Plaintiff's argument. The Plaintiff is merely stating that he cannot predict the future and tell the Court with complete certainty what new x-rays might tell. *See* Docket No. 36.

Thus, the question is whether the Plaintiff currently has the alleged injury, not whether he was injured at the time the x-ray was taken.[2] The critical evidence, therefore, is the Plaintiff's spine, and not the x-ray.[3] Considering that the Plaintiff's spine still exists and that there are no affirmative allegations that the x-ray captured a critical moment in time, the Court concludes that the lost x-rays are not critical to the case.[4] Additionally, the Defendant is not prejudiced by the lost x-rays because the Plaintiff has agreed to provide more recent x-rays of his spine, which would indeed show whether he has the alleged ongoing injury.

### 3. Less Drastic Sanctions

Here, the less drastic sanctions are obvious. The Plaintiff asserts that he has a permanent spine injury which is visible via x-ray, and the Defendant lacks x-rays to verify this claim. Accordingly, the Plaintiff shall submit to an x-ray exam and provide copies of the x-rays to the Defendants. Failure to comply with this Order may result in the dismissal of the cervical spine claims.

Additionally, the Court should fashion a remedy which serves "the prophylactic, punitive, and remedial rationales underlying the spoilation doctrine." *Silvestri,* 271 F.3d at 590. Here, the Court finds that appropriate punitive sanctions may include imposing on the Plaintiff the cost of the delay in the production of x-rays of his spine. The Plaintiff shall bear the cost of replacing the x-rays and providing the x-rays to the Defendant and its experts, as well as any other costs caused by the delay in the production of the recent x-ray which would not have otherwise been incurred had the Plaintiff provided recent x-rays without delay. This includes, but is not limited

---

[2] Neither the Defendant or the Plaintiff argue that the Plaintiff's condition may have changed since the taking of the x-ray. The dispute concerns whether the Plaintiff has permanent injuries.

[3] Prior to imposing sanctions or redressing conduct, it must be shown whether the missing evidence is critical to the case of the moving party. *May v. F/V LORENA MARIE*, 2011 WL 1875470 (D. Alaska May 16, 2011) (*citing Nichols v. State Farm Fare and Casualty Co.*, 6 P.3d 300, 304 (Alaska 2000)); see also *Babich v. River Oaks Toyota*, 879 N.E .2d 420 (1st Dist., 2007).

[4] The Court notes that the Defendant does not claim it requested the Plaintiff to take additional x-rays. Rather it appears that the Defendant sought the existing x-rays only upon learning they existed, as it was entitled to do. However, until the Defendant learned about those x-rays, there is no indication that it believed recent x-rays were necessary to present its case. This further indicates that the lost x-rays are not critical to the Defendant's case.

to, any depositions which must be retaken. Finally, any references by the Plaintiff and/or his experts concerning the lost set of x-rays shall be stricken.

Prior to imposing these sanctions, the Court will allow the Plaintiff an opportunity to be heard, and the Defendant an opportunity to respond, at a hearing set for Monday, May 20, 2013, at 11:00 a.m., in courtroom 3A.

In sum, three of the five dismissal factors support denying the request to dismiss the Plaintiff's cervical spine claims. The lack of prejudice, the availability of less drastic sanctions, and the public policy favoring disposition of cases on their merits all weigh against dismissal. Only the management of the Court's docket and the public interest in the expeditious resolution of the case weigh in favor of dismissal. Accordingly, the Court finds that the harsh sanction of dismissal is not appropriate in this case.

## II.     Request for Adverse Inference

In the event that the Court does not dismiss the Plaintiff's cervical spine injury claims, which, as discussed above, it will not, the Defendant has requested an adverse inference that the x-rays would show that the Plaintiff's condition has improved and preclude the Plaintiff's treating medical providers from testifying regarding the contents of the lost x-rays, that the Plaintiff's condition has worsened, and that the Plaintiff's condition will require future medical care. Docket No. 39, at 2.

"A federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence." *Med. Lab. Mgmt. Consultants v. Am. Broad. Companies, Inc.*, 306 F.3d 806, 823-24 (9th Cir. 2002) (citing *Glover v. BIC Corp.,* 6 F.3d 1318, 1329 (9th Cir.1993)). This power includes the power to sanction the responsible party by instructing the jury that it may infer that the spoiled or destroyed evidence would have been unfavorable to the responsible party. *Id.; Akiona v. United States,* 938 F.2d 158, 161 (9th Cir.1991). When relevant evidence is lost accidentally or for an innocent reason, an adverse evidentiary inference from the loss may be rejected. *Med. Lab. Mgmt. Consultants,* 306 F.3d at 823-24 (9th Cir. 2002) (citing *Blinzler v. Marriott Int'l, Inc.,* 81 F.3d 1148, 1159 (1st Cir.1996)). For example, in *Med. Lab. Mgmt. Consultants*, the district court

concluded that, under the totality of the circumstances, an unfavorable inference was not warranted because a rational jury would not infer that Defendants' loss of pap-smear slides indicated that the slides threatened Defendants' legal position and needed to be covered up. *Med. Lab. Mgmt. Consultants,* 306 F.3d at 823-24 (9th Cir. 2002); citing *Brewer v. Quaker State Oil Ref. Corp.,* 72 F.3d 326, 334 (3d Cir.1995) (the district court did not abuse its discretion in refusing an unfavorable inference when the circumstances indicated that the evidence was not intentionally lost and the responsible party searched for it, but to no avail); *Latimore v. Citibank Fed. Sav. Bank,* 151 F.3d 712, 716 (7th Cir.1998) (the inference that a missing record contained adverse evidence was not justified when the record's loss was inadvertent); *see also Akiona,* 938 F.2d at 161 (noting that "a party who has notice that [evidence] is relevant to litigation and who proceeds to destroy the [evidence] is more likely to have been threatened by the [evidence] than is a party in the same position who does not destroy the [evidence]," and that the adverse inference is based upon evidentiary and deterrence rationales) (quoting *Welsh \*825 v. United States,* 844 F.2d 1239, 1246 (6th Cir.1988)).

Here, there is no indication that the Plaintiff destroyed or intentionally lost the x-rays. Rather, the loss appears to be accidental or for an innocent reason. Thus, an adverse evidentiary inference from the loss may be rejected. See *Med. Lab. Mgmt. Consultants,* 306 F.3d at 823-24 (9th Cir. 2002). Considering the totality of the circumstances, including the inadvertence of the loss and the Plaintiff's willingness to submit to additional x-rays, the Court denies the request for an adverse evidentiary inference.

**III.     Request for Costs and Fees Incurred in Preparing Motion**

The Defendant has requested costs and fees associated with bringing this motion. The Court denies this request. Although the Plaintiff is at fault for having lost a set of x-rays, the proper course of action for the Defendant would have been to move to compel the production of recent x-rays of the Plaintiff's spine. Prior to moving to compel, however, the Defendant would have met and conferred with the Plaintiff on this dispute in an effort to avoid court involvement. Had the Defendant met and conferred with the Plaintiff on this issue, it is likely that the parties could have resolved this dispute without bringing the present motion. Thus, the Court finds that

the cost of the costs and fees the Defendant incurred in preparing this motion should not be imposed on the Plaintiff.

Additionally, the Court finds that the costs and fees incurred by the Plaintiff in responding to this motion should not be imposed on the Defendant because this entire dispute could have been avoided had the Plaintiff not lost the x-rays.

## **CONCLUSION**

Based on the foregoing, and good cause appearing therefore,

**IT IS HEREBY ORDERED** that the portion of Defendant's Motion to Dismiss Plaintiff's Claims of Cervical Spine Injury on the Grounds of Spoilation of Evidence (#30) is **DENIED in part and GRANTED in part**.

**IT IS FURTHER ORDERED** that the Defendant's request for dismissal of claims **DENIED**;

**IT IS FURTHER ORDERED** that the Defendant's request for adverse inference is **DENIED**;

**IT IS FURTHER ORDERED** that the Defendant's request for costs and fees is **DENIED**;

**IT IS FURTHER ORDERED** that the Defendant's requests for sanctions generally, is **GRANTED pending the hearing set for May 20, 2013**;

**IT IS FURTHER ORDERED** that the Plaintiff shall have an opportunity to be heard prior to the imposition of sanctions at a hearing set for Monday, May 20, 2013, at 11:00 a.m., in courtroom 3A.

DATED this __10th__ day of May, 2013

_____
**NANCY J. KOPPE**
**United States Magistrate Judge**